and welcome. We'll begin with our first case of six for this morning. And after this first case, we'll take a short recess to recompose the panel. Our first case is number 20-3478, the City of Fishers and others v. DIRECTTV and others. Mr. Charnas, good morning. We'll begin with you. Good morning, Your Honor. I may have pleased the court. My name is Adam Charnas and I represent the streaming providers in this appeal. The city's filed this lawsuit to collect a franchise fee never before assessed on video streaming providers. They filed this collection action in court because unlike all other taxes, Indiana law provides no required process for the cities to collect the taxes or for taxpayers to challenge the lawfulness of the tax. After the providers removed this action to federal court, the district court remanded the case based on the comedy doctrine as articulated in the Supreme Court's Levin case. But the district court ignored both Congress's specific instructions in the Class Action Fairness Act and the fact that Levin is a narrow doctrine that is designed to apply in specific circumstances and to remedy specific harms that are not present here. Levin is not a magical incantation that sends the state court any case involving state or local taxes or the state or local public fisc. As our briefs explain, there are many reasons why we believe the district court's remand of the case was improper, but I want to primarily focus on two, and the first is the Class Action Fairness Act. In CAFA, Congress, as it articulated in the legislative history and in the text of the statute itself, intended to move class actions to federal court because state courts, many state courts, were mishandling them and particularly with respect to out-of-state defendants in interstate cases. And Congress specifically defined when federal jurisdiction was proper and, more importantly here, specifically provided enumerated exceptions for when federal courts should not hear class actions that otherwise fell within the definitions in the statute. In so doing, Congress instructed the courts to read the statute broadly, quote, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant. In addition to specifically telling the federal district courts when they, quote, shall have original jurisdiction of any civil case, unquote, the statute included four specific exceptions. One of those exceptions, the interest of justice exception, is discretionary. It gives the judge the right to do so. It doesn't have to. But the other three are mandatory. It instructs the district court when it shall decline jurisdiction. And those three exceptions speak to comedy-like questions. In other words, the, I think one of the challenges with that argument that maybe you could address is that multiple courts, including the Supreme Court, you know, have cautioned that statutes, jurisdictional statutes, need to be read with a sensitivity to federal-state relations and comedy principles. You know, we've said that most recently, and we've recognized that most recently in our Saskatchewan opinion that way. But that's in no way unique or going out on a limb. The Supreme Court has recognized that many times over. And indeed, it seems if you take your position all the way to the end, what I worry about is, is it even consistent with what's happened after the Tax Injunction Act was passed? I mean, how does Levin even make sense? Right. Well, Levin was not in the class action context. And what I would say in response, Your Honor, is that it's certainly true that this court and other courts, the Supreme Court, have said that jurisdictional statutes have to be construed that way. But the difference in CAFA is that Congress specifically enumerated the considerations and the exceptions to CAFA are, you know, fused with comedy-like principles. Perhaps the most, the best example of that is in 1332d5, which directs that the CAFA does not apply when, quote, the primary defendants are states, state officials, or other governmental entities against whom the district court may be foreclosed from ordering relief. And that, you know, with respect to the states, the 11th Amendment applies, but the 11th Amendment does not apply to the cities. So this is essentially a codification or application of the Tax Injunction Act and comedy-like principles. So Congress was expressly explaining when, I think, when comedy-like principles should preclude a class action. And therefore it's, I think, akin to this court's Atkins decision. In Atkins, this court held in the context of an environmental statute, RCRA, the statute provided for private causes of action and specifically enumerated when pending government act, enforcement actions, would preclude those private causes of action. In the Atkins case, the exceptions do not apply, but the district court applied abstention doctrines anyway and this court reversed and said because Congress specifically addressed this, or because Congress addressed the specific class of interest at issue in the statutory text, the courts were not free to use abstention doctrines to kick cases out of federal court that otherwise fell within the statute. So I think that... Mr. Tarnas, on this question of the exceptions and how they might I think we're making alternative arguments, one of which does not rely on ThermTron. I think the class action, our argument that the Class Action Fairness Act, that the exceptions to federal jurisdiction under CAFA preclude application of abstention doctrines does not depend on ThermTron. I think ThermTron is an additional ground that we are arguing that even apart from CAFA's argument that CAFA's limitations or exceptions are exclusive, ThermTron and Prohill combined and Prodigy are the preclude remand to it. So the first argument is we think CAFA precludes what the district court here did because none of the CAFA exceptions apply. Our second primary argument deals with Levin, and that is we believe that the district court simply read Levin way too broadly. Levin comedy applies to actions filed by taxpayers in an effort to bypass available and filed by the taxing authority seeking to collect taxes allegedly due under the statute. The purpose and this is the Levin case itself is infused with the consideration that the purpose of the doctrine is to show deference to the state administrative process for collecting taxes, and the reason is, and the court is pretty explicit at this, particularly in footnote 2 of Levin, the reason is that in many instances states and localities require the taxpayer to pay the taxes that are owed and then to challenge the applicability or lawfulness or constitutionality of the tax after payment is made, and that's to avoid stressing the state or local tax collection process or as the court in Levin put it, shifting the risk of taxpayer insolvency to the to the government agency. Mr. Charnas, why though, and maybe I'm just mistaken in reading this in, why is it so important that we discern whether the franchise fee is a tax or not? I mean it certainly seems to be, it's a statute that requires a fee to be paid to local governments, it's enacted by the Indiana General Assembly, it's used at a local level including, you know, in general operating funds. Why isn't that close enough? Well, your honor, I don't think this court has to decide the tax versus fee issue and whether Levin comedy would apply to a fee. That's, I think the court can assume that this is a tax for purposes of Levin. I will say that there is a, that the, there is authority that Levin comedy does not apply to fees and only applies to taxes, but I think that's not our primary Levin argument. Right, and so if you acknowledge that, and look, you've got a whole host of arguments, or your client does, I can tell from the motion to dismiss filed in Indianapolis in the state court, that, you know, you've got statutory construction arguments, are you in or are you not in as a video service, you've got primary jurisdiction, you've got federal constitutional issues in play. The state tribunal, is it not, is fully capable of resolving all of those issues, and as kind of a matter in the first instance, just construing this statute, interpreting it, what does it mean? Because you've got to figure out is anything passing a public right of way, et cetera, et cetera. The point of the question is that the adjudication of the claim in all of the defenses would seem to immerse whatever court decides the matter into the fiscal affairs of a state. Well, let me answer that in two or three different ways. First of all, in every diversity case, the federal court is deciding and construing and applying state law by definition. So that by itself was not a basis to display its federal jurisdiction. Second, this case, this is a case about money that the cities say the providers owe them. That by itself does not invoke the comedy doctrine. Levin deals with situations in which the state or city tax collection process would be frustrated during the process of the litigation. It also, and this is another major consideration in Levin, Levin focused on the fact that the claims there were of an unequal treatment, equal protection, commerce clause, high discrimination claims. And what the court explained is that because of remedial limitations on the federal court, not the state court, the state court was better positioned. In other words, when you have uneven taxes, you can either raise one party's taxes or lower the other party's taxes. And because of the tax injunction act, federal court could not, potentially could not lower taxes for one party because that would deprive the municipality of revenue. That's not the case here at all. There's no claim of unequal treatment. And therefore there's no remedial limitation on the federal court. The federal court simply has to decide whether these fees are applicable in these circumstances or not. So, so we just think the whole concept, the whole rationale for the Levin doctrine is inapplicable here. And while there are not a lot of cases in the federal courts in which, which have determined whether Levin applies to, to tax collector collection actions, there are several district court opinions, at least three, which have held that Levin is inapplicable in the tax collection context and have permitted removal of tax collection actions. It's particularly true where we think Levin is inapplicable here because this is not a case in which the city is going to, the city is not going to be deprived of revenue during the litigation of the case that they otherwise would have if we followed the state tax process and litigated in state court. They're not getting their revenue until this case is over, whether we litigate in federal court or state court. And that's because Indiana does not have a process that requires us to pay first and litigate second. If the court has no further questions, I'll reserve the balance of my time for rebuttal. Okay. Hearing none, very well. Mr. Brocious, we'll turn to you. Good morning, your honors, and may it please the court. My name is Garrett Brocious, and I represent the Appellate Leads. This case is about whether Indiana cities can collect revenue from these companies that deliver video through the city's right-of-way. The district court properly exercised its discretion to remand the case for two reasons. First, it is now settled law that district courts do have the authority to remand cases based on conclusion, and nothing about CAFA changed that. Second, the district court did not abuse its discretion because this is an equitable action that will require a court to tell these cities what revenue they can and can't collect. Out of comedy, the Supreme Court has instructed federal courts to avoid becoming involved in these types of cases for over 100 years. The court properly exercised its discretion to remand the case back to state court. Now, turning back to the first question, should the court decide to even entertain it despite the waiver issue, the answer is yes, the court did have the authority to remand on the basis of comedy. In the briefing, defendants primarily rely on ThermTron, which is a 1976 case from the Supreme Court, and ThermTron involved a clearly impermissible remand. There, the district court had simply remanded based on an overcrowded docket. And the Supreme Court, when deciding that case, did use some far-reaching language. And some courts, after ThermTron, latched onto that language and said that courts no longer have the ability to remand for non-statutory bases. But in 1988, the Supreme Court revisited that rule and overruled those cases. And what Cohill said, and the issue was directly before the Cohill court, and the issue was whether there were non-statutory bases for remand any longer. And the Supreme Court said, yes, as long as it is a recognized basis for exercising discretion, then there is still the ability to remand, even on a common law basis. And every court since Cohill to examine this issue has said that that applies in the context of abstention as well. The Third Circuit in the Balasik case reached that conclusion in an 11 comedy case. The Second Circuit reached that conclusion in Corcoran, and the Eighth Circuit reached that conclusion in Milan, and the Eleventh Circuit has addressed that as well. Now, in their briefing, defendants pointed to this court's Ryan case, but Ryan predated Cohill. And in fact, Judge Flom's case that came after Cohill addressed this issue a bit, and it said that, and it recognized that after Cohill, the remand statute does not contain all the permissible grounds for remand. That Rothner opinion recognized that sometimes the common law must supplement those, the remand statute. And so it went on to say with approval that courts do apply abstention to allow remands even when jurisdictional thresholds are met. So this is settled law at this point, and nothing about CAFA changed that. As is often recognized by the Supreme Court, jurisdictional statutes must be read with the same, with the general sensitivity to federal state relations. And as this court in Saskatchewan recognized that CAFA is such a jurisdictional statute that must be read with that sensitivity to federal state relations. And it went on to say that Comedy supported the dismissal in the Saskatchewan case. And this is a separate- Can I ask you, here's what's on my mind with your position. What's the limiting principle of your argument? State and local governments impose all kinds of fees and taxes. They have kinds of licensing and permitting schemes in place for nearly everything. Garbage collection, disposal of environmental waste, operating a liquor store, on and on and on. And all those fees could be viewed as some form of revenue. And in a case like this where you have these companies, they're basically just raising a coverage question. Are we covered by the statute or are we not covered by the statute? It can't be that Levin Comedy reaches all of those circumstances. What's the limiting principle? You're right, Your Honor. There has to be a limit somewhere. But it's our position that this is firmly within the center of Levin Comedy. And, you know, the reason why is because you look at the Levin factors and those factors addressed by Levin, that in itself is going to apply some limiting principles. We don't think that those factors are binding, but they at least provide guidance to court and provide some limiting factors. How would you articulate the limiting principle with respect to a hypothetical statute that required the payment of a fee to get a permit or a license to dispose of waste? Yeah, Your Honor, I think that would be a closer call because at that point you're talking about something that is a one-time payment for something. But as Your Honor recognized, this is much closer. What about an annual fee to sell liquor? Your Honor, again, you know, there has to be a limit somewhere, but we aren't at that limit. What is it in your view? I understand and appreciate that you want to turn to the facts of this case. There are a lot of legal issues that surround, you know, this particular dispute. And what would help me is to hear you articulate what you think the limiting principles are. Yeah, Your Honor, so I think the limiting principles are found in the Levin opinion by going through those factors. And so if it is a liquor license, for instance, the court can go through those Levin factors and decide whether or not it applies. And it might be the case with the liquor license that if it's not a case about, you know, whether one company is getting a competitive advantage over the other and whether it is not a case that's involving a typical form of local regulation, then maybe that's outside of the Levin context. The problem with just relying on the Levin factors, though, seems to me is it's not a circumscribed universe. Levin has these three strong suggestions, but because it's a prudential doctrine, there could be factors outside of that. Following up on Judge Scudder's questions, the concern about not having a limiting principle is here we have a federal statute granting jurisdiction. And absent abstention, there are purposes behind that diversity, diversity of citizenship jurisdiction. The xenophobia, having Indiana courts interpret Indiana law, concern by national corporations that a state court might not have the resources that a federal court would. So is there a camel's there are more than just the three Levin factors? So, Your Honor, I don't think there would be a problem saying that there should be more than just the Levin factors. But I think I would go back to the point that this is not a case that is at the outer boundaries. The Fourth Circuit, in a case involving DirecTV, already looked at franchise fees, and they already analyzed a franchise fee involving video services under North Carolina law. And they came to determination that that is exactly the type of case that falls within Levin comedy doctrine and should first be decided by state courts. And, you know, the cities believe that Indiana should be accorded the same respect out of comedy that North Carolina was accorded in that case. So, yes, there has to be limits. But we think this is squarely within the Levin comedy doctrine because these types of fees are about something that is within the traditional regulatory process. We're talking about what fees the cities can collect for something that is being delivered through the city's rights-of-way. And it is a gross receipts fee on that video that is being delivered through the city's public rights-of-way. Mr. Brosius, is it your position that municipalities such as we have here bring a unique perspective that, and which would be reflected through both the legislature and the judicial officers of Indiana, that would bring a view that might not be as aware of by judicial officers in the federal system? Yes, so there are, as was noted previously, there are a number of decisions that need to be made in this case. There are constitutional issues. There are questions about the reach of the statute, a statute that no court has ever interpreted before. And this case was brought in Indiana's commercial court for that reason. The Indiana commercial court is a specialized court to deal with these types of disputes. And it is more aware of the legislative preferences of the Indiana General Assembly, which was the legislature that passed this Indiana Act. And so when making all of those judgments, and there are remedial options in play as well. Defendants, for instance, have argued that it would be impossible for them to comply with local programming requirements under the Act, or peg channel requirements under the Act. And it very well could be the case that a court will have to decide whether the defendants don't have to comply with that part of the Act, but maybe they do still have to pay the fee. So there are a number of questions in play that need to be answered. And that again, takes this back into the Levin context, because there are just so many more questions that the state commercial court will be more familiar with than a federal court. And of course, the state court won't be hampered in any way by the Tax Injunction Act when it comes to constitutional questions that are at issue. And I would also like to address the concern that Mr. Charns raised about this being brought directly in state court. The Indiana's Regulatory Commission plays a very limited role in this case, in that it is mostly a ministerial role. The Regulatory Commission, as long as the paperwork is provided by the companies, the Regulatory Commission is supposed to provide the state franchise to the companies. But the Regulatory Commission, its role isn't to decide questions of law about the reach of the Act, and it certainly isn't authorized by the Act to decide constitutional issues. And so it's up to the state courts to decide those types of issues. And it was the companies that were completely ignoring this Act. And so the cities then brought this action in state commercial court to resolve this dispute inside the region. Let that point cut the other way. And here's what I mean by that. Comedy, whether you're talking about Levin or McNary, or you want to go back even further, one of the big concerns with it, of course, is interference with state or local fiscal operations, most especially in the area of taxation. And so when you say, well, the Regulatory Commission really doesn't do much here. They hand out certificates. They collect the fees that way. Doesn't that suggest that the concern about interference is actually quite minimal? What you really have here is you have a question about statutory coverage. Are they included or are they not under the statute? And as Mr. Charnas says, federal courts sitting in diversity answer questions like that all day long. Your Honor, I don't think so. And the reason why is because comedy wasn't born as much out of procedural concerns, but it was more born out of substance concerns. And so the concern is that when you have a case that is going to require a court to decide what revenue a local government can and can't collect, well, that involves principles of federalism and a recognition that we have a union between the state governments and the federal government, and that federal courts should avoid deciding those types of questions, dictating to local governments what they can and can't collect, so long as federal rights are preserved. I don't know how you can say that that's the historical pedigree of the doctrine. In Levin itself, the court in explaining comedy principles relies upon that concurring opinion from Perez that Justice Brennan wrote, and it's in footnote two, and the whole footnote is about procedure. Yes, Your Honor. So one of the things addressed in Levin that supported it is procedure. But if you go back to the McNary case, which was a unanimous opinion, McNary didn't involve the procedure. In fact, that's one of the arguments that was made in McNary, that the comedy concerns didn't arise there because it was a 1983 case for damages. And the Supreme Court said that, yes, the same comedy concerns still arise, because before you can decide whether or not to order damages, you first have to decide whether or not that tax can be collected. And so McNary shows that the concerns aren't just about the collection process, but they're about the substantive issues of a federal court reaching out in a case like this and picking winners and losers and deciding what fees, what revenue local governments can and can't collect. Can I ask you a question on a different front? I want to make sure that you have a moment to address this, and if it cuts into your time, we can give you an extra couple minutes and afford the same courtesy to the other side. What arguments, what issues do you think your adversaries have waived here? Yes, Your Honor, I'll be happy to address that question. So I think the entire first question presented, which is whether or not ThermTron applies in this context. ThermTron was never even cited in the district court briefing below, and defendants never argued that the court lacked discretion. Instead, they made the entire argument that it was a matter of discretion. So I think that question has been waived. Within the second question presented, it's a little more nuanced. Defendants never raised the damages issue, the damages rule below. They never argued that comedy doesn't apply in damages questions. And then they also never made the pending state proceedings argument as well. They never argued that comedy doesn't apply in pending state proceedings. They also didn't go through the Levin factors, but of course, the district court did analyze those Levin factors, and the city's acknowledged that the court has the discretion to go through those Levin factors since the district court relied upon those. If the court has no further questions, I'd like to just end by again citing the Fourth Circuit's DIRECTV case, which was, again, a franchise fee involving the delivery of video services. And there, the Fourth Circuit found that that was the type of case that was within the comedy doctrine, and that was best decided by state courts. And we ask that Indiana be shown the same respect as North Carolina, and that the court affirm the district court's remand because it did not abuse its discretion in doing so. Thank you. Mr. Brosius, thanks to you. Mr. Charnas, we'll return to you. You got, we'll give you seven minutes. Thank you. Thank you, Your Honor. I want to start with the DIRECTV case that counsel just referred to. DIRECTV versus Tolson in the Fourth Circuit is completely different in this case in at least two respects. First, and perhaps less significantly, that's not a collection action filed by the tax collector seeking to bring in revenue. It's an action by a taxpayer in federal court under Section 1983 seeking to to preclude collection of taxes. More fundamentally is the argument that DIRECTV made in this case, and you can see this at page 127 of the Fourth Circuit's opinion. What the court said was, quote, what plaintiffs asked for here is a federal court-ordered redistribution of intrastate tax taxation authority. Later on in that page, the court said that the plaintiff sought to reallocate taxing authority between the state and its political subdivisions. That was the real objection that the Fourth Circuit had in that case, is that was that the plaintiff sought to move the authority to assess a franchise fee from the localities where, from state law used to be like in Indiana, which is the localities had the right to assess a franchise fee. State legislature moved that back up to the General Assembly, and the plaintiff's argument was that actually the federal court should reallocate that back down to the localities. That clearly is an interference not only with the tax collection efforts, but essentially with how the state government allocates authority within the government, and that was the real objection that the Fourth Circuit had. With respect to the question about whether a state court would be better situated to decide this case because it involves questions of state law, the only thing I would note on that point is not in addition to the fact that federal courts are perfectly competent to interpret state law. Actually, I would point to two things. Number one, as counsel said, this is a statute that had never before been interpreted by the state court, so it's not like there's a unique and deep body of authority and knowledge among state judges that could be applied. State judges are neophytes in interpreting the statute just like a federal judge would be. More fundamentally, this statute incorporates federal law in substantial respect. In fact, the key definition of video programming, the statute incorporates the federal definition of video programming, and certainly a state judge has no experience or more greater expertise in interpreting that. You know, with respect to what the essence of the city's complaint is, counsel said, well, this is an equitable case, and we certainly disagree with that. If you look at paragraph 15 of the complaint, which is on page B31 of the city's supplemental appendix, they describe what their action is. They say, quote, this action is brought by plaintiffs commissioned to receive franchise fees from the defendants. The cities are asking for money. They're asking for money that they claim is already owed, and they're asking for an order that we pay money going forward. That's not an equitable action. Now, they do have, they do plead for a declaratory judgment, but in every action involving money, the plaintiff can ask for declaratory relief. I sue, if I sue you for breach of contract, count one could be asking for a declaration that you brought, that you breached the contract, and count two can be for damages based on that. The fact that there's a declaratory judgment claim in there doesn't mean it's not a claim for money, and that is important for the application of Quackenbush. You know, it is true that we did not make this argument in these terms below, but this court has discretion as it's recognized to address the argument, and Quackenbush is crystal clear that abstention doctrines only apply when the court has discretion to grant or deny relief, and based on the city's own argument, there is no discretion here. Either we owe the money under the statute, or we don't owe the money under the statute. The difficulty that I have with that argument is that Quackenbush took some care, did it not, to recognize the comedy principle from McNary. I mean, Justice O'Connor, when she wrote that opinion, just didn't by happenstance include, you know, that carve out there. So can you, would you mind addressing that, Mr. Charnas? Sure. I think what, I absolutely agree that Quackenbush dealt carefully with McNary, but it dealt carefully with McNary by dramatically limiting it to the section 1983 context, and this is not a 1983 action. This is a collection action, as I've emphasized probably too much. It's a collection action by the cities. No one is making a section 1983, or the cities are making a 1983 claim here. So we think that aspect of Quackenbush, or that aspect of McNary, is irrelevant. The key point is that Quackenbush clearly holds that in a case involving money damages, or a case involving monetary relief, that abstention doctrines don't apply. And the Fifth Circuit, in the Webb case, understood this clearly. It said Quackenbush imposes, quote, an ironclad per se bar to remanding damages act. Finally, I do want to address the waiver point that was raised, and note that most importantly, the two arguments that I've focused on here today, counsel did not suggest that we waive, and that is that CAFA displaces comedy and other abstention doctrines, and that Levin comedy does not apply because this is a collection action filed by the cities, and not an action like a 1983 action filed by the taxpayer seeking to block collection of actions, particularly making an unequal treatment argument. Those two arguments were clearly preserved below as counsel has conceded with respect to the other arguments. This court has said repeatedly that it has discretion to reach arguments even if they were not made below. Here, these are purely legal arguments. There are no facts that are relevant to any of these arguments. The district court is not disadvantaged by the fact that we didn't make it below. Counsel hasn't argued that the cities were prejudiced in any way by the fact that we did. Oh, Mr. Jones, are we to set aside all our jurisprudence on waiver? No, your honor. I think you should, as this court has recognized, you have discretion to make arguments that were not made below. If they're legal arguments and no one would be prejudiced, then we're simply asking that you do so in the circumstances given the importance of the case. Well, the importance of the case would call for advancing those arguments in a significant piece of litigation like this, wouldn't it? Yes, your honor, and our primary arguments that I've made here today are arguments that no one has suggested that have been waived. All right, thank you. Okay, thanks to both counsel. The case will be submitted. We appreciate your arguments and the quality of the briefing. The court will take a brief recess before we reconvene the panel and proceed to our second case. Thank you. Thank you.